Danby Bank *v.* State Treasurer.

---

DANBY BANK *v.* STATE TREASURER.

[IN CHANCERY.]

*Banks.*

The Danby Bank was in business several years without contributing to the bank fund, the directors giving bonds instead for the security of the bills and deposits. After 1856 the directors did not give bonds but paid into the fund. *Held,* that the liability of the fund attached at once upon the failure of the directors to give bonds.

*Held,* also, that the state treasurer was properly made a party to the application for the fund.

APPEAL FROM CHANCERY. The facts set forth in the petition, answer and replication, and the decree of the court, made at the March Term, 1864, KELLOGG, Chancellor, are sufficiently stated in the opinion of the court.

*E. Edgerton,* for the petitionee.

The four banks, that contributed the fund in question by C. S., ch. 84, § 6, are made its " *owners*," with. the exception of that portion of it paid in by the Danby Bank; and one of these (The Farmers' Bank) has already, under § 13 of the same statute, claimed payment of its share from the state treasurer. These banks should therefore all be made parties to the present proceeding, that their respective rights may be conclusively settled by such order as the court shall make. Story's Eq. Pl. § 207; *Noyes* v. *Sawyer,* 3 Vt. 160.

The Danby Bank prior to the payment to the state treasurer of any part of the $750. had suspended its redemptions and all its business, and had finally failed and become insolvent, and although this payment was not intended, probably, as a fraud, it nevertheless has that effect upon the other safety fund banks, and should not subject them to the payment of the Danby Bank debts. See C. S., ch. 84, §§ 6, 7, and 8.

Another point which the court are requested to consider, is, whether the directors of the Danby Bank, having given bonds as they did, pursuant to § 57, p. 490 of the statutes up to the year 1856 could subsequently make their debts a charge upon the bank fund, by neglecting thereafter to renew their annual bonds. (§ 87, p. 495, C. S.) Especially when it does not appear when the insolvency actually accrued.

The decree should have been made for the amount of the bank fund merely, which is shown by the case to be but $13,125.

*Prout & Dunton,* on the same side.

1. When the directors gave bonds for the redemption of the bills, &c., the bank thereafter became exempt from all the provisions of the statute relative to the bank fund. C. S., p. 495, §§ 87, 88, 89.

It is absurd to contend that a bank might adopt this system of securing its bill holders and depositors by the bonds of its directors, until it was in failing circumstances, then elect a new board of directors, and, by their neglect or refusal to give the requisite bonds for the redemption of the bills and payment of the depositors, thereby charge the bank fund.

As to the construction of statutes not explicit, see Kent 521, and note and cases there cited.

Danby Bank *v.* State Treasurer.

This bank fund is the property of the banks that contributed it, (see C. S., p. 482, § 6,) and its owners can only be divested of it by a strict compliance with the statute. *Spear* v. *Ditty*, 9 Vt. 283 ; *Brown et al.* v. *Wright*, 17 Vt. 97 ; *Chandler* v. *Spear*, 22 Vt. 388 ; *Culver* v. *Hayden*, 1 Vt. 364.

The Danby Bank has not complied with the statute. The directors did not either give the requisite bonds or contribute to the bank fund, until after the bank failed.

If true that the bill holders and depositors have no security if their bank fund fails them, it does not alter the case. The equities of the owners of this fund, are, to say the least, equal to the equities of the bill holders and other creditors of the bank ; and when the equities are equal, the law must prevail. 1 Story's Eq., p. 57 ; *Fitzsimmons* v. *Ogden*, 7 Cranch ; Mitford Eq. Pl. 274.

*G. W. Harman*, for the receiver of Danby Bank, maintained that if the directors give bonds for the payment of bills and deposits, such act exempts the bank from all payments to the " bank fund," but this exemption exists only while the bonds are extant. The general provisions of the statute make it the duty of the bank to contribute to the " bank fund." The exception is that if the directors give the bonds to pay the bills and deposits, *while they are in office*, the bank shall "*thereafter*" be exempt from all payments to the " bank fund."

The court are called upon by construction, to give a meaning to the term "*thereafter*" as used in this statute. We claim that it should be limited to the period for which the directors furnish their bonds ; that such is the only rational construction.

Should the decree of the court of chancery be affirmed, the cause should be remanded, untrammelled by any order which shall preclude the receiver or creditors from a full examination of the state of the " bank fund."

*Peck & Fifield*, for the creditors.

1. The act of 1840 permitting directors to give bonds is an exception to the general rule prescribed by § 1, ch. 84. All banks are safety fund banks unless the directors give bonds, &c. When therefore the directors of this bank ceased to give bonds they became *ipso facto* a safety fund bank, and if the treasurer of the state omitted to

collect their contribution, it was the fault of the state and not of these creditors.

2. But in September, 1857, the bank paid its full contribution for 1856 and 1857 and took the state treasurer's receipt for it. This made the bank a safety fund bank. It was competent for the state to waive the payment of the contribution on the day it was due. Instead of asserting a forfeiture for this neglect they waived it and took the money.

3. The answer alleges that the bank suspended the redemption of its bills, discontinued business and in fact failed before the payments were made to the safety fund. The case, however, shows that the bank elected directors in 1856 and 1857, kept up its organization, and made the payments before mentioned in 1857, so that business was not entirely discontinued. Most of the banks in the state did in 1857 suspend specie payments and business. But,

4. Conceding all the answer claims, the bank would continue subject to the provisions of the safety fund act, until "*it shall become insolvent and have been proceeded against as hereinafter mentioned*;" § 9, ch. 84. This bank could not be regarded as legally insolvent within the meaning of the statute until it was proceeded against as an insolvent corporation which was long subsequent to 1857. The 27th and following sections of the act point out the manner in which insolvent banks shall be proceeded against, and until these proceedings are commenced the corporation cannot be regarded as insolvent.

5. The Danby Bank then, being subject to the safety fund law, the decree of the chancellor was right and in accordance with the 9th section of chapter 84. *Elwood* v. *State Treasurer*, 23 Vt. 701.

PIERPOINT, J. This case comes before this court upon an appeal from an order of the court of chancery, made in the course of proceedings instituted to settle up the affairs of the Danby Bank, as an insolvent banking institution.

The order appealed from fixes the amount of debts against the corporation, the amount of assets applied towards the payment of such debts, and the balance still due ; and directs the receiver, appointed to close the affairs of said bank, to apply to, and receive from, the treasurer of the state, in the manner provided by the statute, a sum sufficient to pay such balance.

This order is based upon the supposition that the bank fund, so called, in the hands of the treasurer of the state, is properly applicable to the payment of the said deficiency.

Before proceeding to make the said order upon the treasurer, the court of chancery caused said treasurer to be cited in, to show cause why the order should not be made. The treasurer appeared before said court, and resisted the making of the order, on the ground that the bank fund in his hands cannot properly be applied to the payment of such deficiency. The decision of the court being adverse to his claim, he has brought the question here by appeal. And the principal question now to be considered is as to the correctness of the order in this respect.

The Danby Bank was chartered in 1850. By the statute of this state then in force, every moneyed corporation having banking powers chartered subsequent to 1831 were required on or before the third Thursday of October in every year, to pay to the treasurer of the state a sum equal to three-fourths of one per cent. on the capital stock of said corporation paid in, (with certain exceptions not affecting this question,) until such corporation shall have paid into the treasury four and one-half per cent. upon its capital stock, to remain a perpetual fund, to be denominated the bank fund, and to be inviolably appropriated, and applied to the payment of such portion of the debts, exclusive of the capital stock, of any of said corporations that should become insolvent, as remain unpaid, after applying the property and effects of such insolvent corporation towards the payment of its debts. See C. S. 481–2.

The legislature of this state at its session in 1840 passed an act in relation to banks, in addition to the then existing law on the subject, which is incorporated into the Compiled Statutes, in which it was provided in section 8 of that act, and sections 56 and 57 of chapter 84 of the Compiled Statutes, that the directors of every bank, chartered, or re-chartered, at that or any subsequent session, should be liable to pay to the creditors and stockholders of such bank, all losses sustained in consequence of any violation, by them, of the provisions of that act, or of any other law, or other unfaithfulness in the discharge of their official duties ; and to secure such liabilities, each of the directors are required to execute a bond to the treasurer of the

state, with sufficient sureties, approved by the bank commissioner, the aggregate amount of which bonds to be equal to the amount of the capital stock of such bank, actually paid in. See Compiled Statutes, 490. The statute requires these bonds to be executed, before the bank can go into operation, or the directors discharge the duties of their office.

By the 87th section it is provided that if the directors of any bank corporation subject to the provisions of this chapter shall execute bonds to the treasurer of the state, to the amount and with the security required in section 57, to be approved by the bank commissioner, and deposited with said treasurer, conditioned that such directors shall at all times pay and redeem according to law all the bills issued by such bank, and shall pay and refund all deposits made in such bank, when such payments are demanded, while such directors are in office, such bank shall thereafter be exempt from all payments, required to be paid in to the bank fund, and from all the provisions for the establishment, preservation and regulation of said fund.

It appears from the agreed facts in the case, that when the Danby Bank first went into operation in 1851, the directors executed bonds according to the provisions of the said 87th section, and continued so to do, until the annual election of directors of said bank on the 2d Tuesday in January, 1856, thus relieving the bank from the annual contribution to the bank fund, as otherwise required by law. After the said second Tuesday in January, 1856, the directors then elected did not execute bonds as provided by said 87th section, but continued the operations of said bank, and at a subsequent period, paid to the treasurer of the state, for the benefit of the bank fund, the required annual contribution for the years 1856 and 1857, amounting to the sum of $750.

It is now insisted on the part of the state treasurer, that the directors having once given bonds according to the provisions of section 87, and operated their bank under the system therein provided, a subsequent failure to execute such bonds does not leave the bank subject to the provisions of the law relating to the bank fund, but only makes them liable to be proceeded against, by the bank commissioner, in a court of chancery, as an insolvent corporation.

In testing the correctness of this position, it must be borne in mind, that the bank, when created, was made subject to the provisions of the law relating to the bank fund. No act of the bank was necessary to bring it within its provisions. It is not a case where it is necessary that the bank should make a choice, or take any action on the subject, to make its organization complete, or for the transaction of its business. When the directors have executed the bonds as required by the 57th section, they are authorized to discharge the duties of directors, and the bank to go into operation. The organization is perfect, and the corporation exists as a banking institution under the law, and is liable to make its annual contribution for the benefit of the bank fund.

By the 87th section a method is provided by which the bank may become exempt from this liability to contribute, and that is by the directors giving bonds to redeem the bills of the bank, and pay the deposits, while such directors are in office. The directors of the Danby Bank having executed such bonds according to the provisions of this section, the bank thereby became exempt from this liability. The question then arises, for what length of time did that exemption continue? The natural and common sense answer would seem to be, just as long as the facts, upon which the exemption was based, continue to exist, and no longer; or in other words, as long as the directors continued to execute such bonds; and that when they fail so to do, the liability under the bank fund law at once attaches, thus effecting the obvious purpose of the statute, that is security to the bill holders, either by means of the bank fund, or the directors' bonds.

But it is said that when the bonds are once executed, so that the exemption exists, by the terms of the statute the exemption is made perpetual, the language being that " such bank shall *thereafter* be exempt," &c. The word " thereafter " in its ordinary signification has no future limitation ; but it is apparent that the word is not used in this section in that unlimited sense. To give it that meaning would defeat the object the legislature had in view, which was to provide a security for the redemption of the bills issued by the several banks in this state, through the medium of the bank fund, or the bonds of the directors.

If when the bank is once exempt by reason of the bonds, they are always thereafter exempt, the neglect of any board of directors, subsequently elected, to execute such bonds would leave the bill holders without any security for the redemption of the bills, beyond the ordinary assets of the bank, unless they could resort to the bank fund.   Even if such neglect would make the bank liable to be proceeded against as an insolvent institution, that would afford no additional security to the bill holders.   Again, the statute does not require the directors at any time, or under any circumstances, to give bonds of this character.   It is optional with every board of directors to do it or not.   When their bonds are once executed they stand as a substituted security to the bill holders, in place of the bank fund, so long as those bonds continue in force and operation as such security, which is in fact until the next annual election of directors.   Then such bonds cease to have that effect, and new bonds become necessary to the continuance of the exemption.   If they are not executed, the bank resumes its original position and obligation, under the law creating and regulating the bank fund.

We think it was the intention of the legislature, as evidenced by the language of the said 87th section in connection with the spirit and purpose of all our legislation upon this subject, to exempt the banks from contribution to the bank fund, so long as the directors of said banks should furnish security for the redemption of their bills, and the payment of depositors, by bonds executed according to the provisions of said section, and no longer; and that the word "thereafter" as used in that section should be taken and considered in that sense.

It is said that under this view of the statute the directors of a bank that is in embarrassed circumstances may, by neglecting to execute bonds, make the bank fund chargeable with the redemption of their bills, when said bank has never contributed anything to said fund, and this to the prejudice of those banks which had contributed. If this be so the fault is with the legislature, and this court cannot remedy the evil.   The legislature in all these provisions was seeking to protect the bill holders, rather than those who should contribute to the fund.   But the liability of the fund to redeem the bills of a particular bank is not made to depend upon the fact, whether the

bank has contributed much or little to the fund, or at all. If the bank had never contributed to the fund, or its directors executed bonds under said 87th section, and the proper authorities had neglected to discharge their duties, and the bank had continued its business until it failed, it will hardly be contended, I apprehend, that the fund would not be liable.

A question has been raised as to the propriety of making the treasurer of the state a party to this application. Whether to do so was the only proper course, it is not necessary now to inquire. We certainly see no impropriety in making him a party. The bank fund is in his hands; he is its keeper, and the only person who has any control over it; he represents the state in the matter. The object of the application was to obtain an order of the chancellor directing the treasurer to pay the bank fund in his hands to the receiver. On notice to him he appears and objects to the granting of the order on the ground that the creditors have no claim upon the fund, for the reasons which we have been considering. This it was clearly competent and proper for him to do. And probably there was no method by which this question could be so readily and economically settled as that adopted, and the chancellor was clearly right in entertaining it.

No question could arise upon this application of the receiver, as to the amount of the bank fund in the hands of the treasurer, the source from which it came, or the claims of others, if any, upon it. All questions of such a character, if they arise, must be settled in the course of other proceedings instituted for that purpose. The only question to be settled here is as to the right of the receiver to resort to this fund, and the amount which he is entitled to apply for, and recover, from the treasurer. These questions settled in his favor, the order follows as a matter of course. All this would be necessary if there was no money in the hands of the treasurer belonging to the bank fund—the statute pointing out the course to be pursued in such a case.

The decree of the chancellor is affirmed and the case remanded.